# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF NORTH CAROLINA
### ASHEVILLE DIVISION
### 1:19-cr-27-MOC-DCK-4

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| vs. | ) |
| | ) **ORDER** |
| LINDA MICHELLE PATINO, | ) |
| | ) |
| Defendant. | ) |
| | ) |

**THIS MATTER** is before the Court on Defendant Linda Patino's pro se Motion for Compassionate Release/Reduction of Sentence. (Doc. No. 128). Defendant seeks early release from prison under 18 U.S.C. § 3582(c)(1)(A). The Government has responded in opposition to the motion. For the following reasons, Defendant's motion for compassionate release is denied.

## BACKGROUND

On August 2, 2019, Defendant pleaded guilty to conspiracy to distribute and possess with intent to distribute methamphetamine. (Doc. No. 59). This Court sentenced her on November 25, 2019, to 70 months of imprisonment, to be followed by 4 years of supervised release (Doc. No. 102). Defendant is currently housed at SFF-Hazelton in Bruceton Mills, West Virginia, and her projected release date is March 24, 2023.

On October 2, 2020, Defendant requested a Reduction in Sentence ("RIS") from the Bureau of Prisons ("BOP"). (Gov. Ex. 1, pp. 2–3). When asked about the reason for her RIS request, Defendant marked off "Debilitated Medical Condition," consisting of obesity, anxiety, and depression. (Gov. Ex. 1, p.2). The RIS form allows inmates to cite additional information they would like to be considered. Defendant asked BOP to also consider the following

-1-

circumstances at home: that her five-year-old son is "disabled . . . has muscular dystrophy . . . is deaf . . . is autistic and he can't walk," and that his caregiver, Defendant's mother, has "arthritis, a broken disc in her back, and many other critical health problems." (Gov. Ex. 1, p. 3).

Warden Adams responded to Defendant's RIS request based on her "Debilitated Medical Condition" on October 16, 2020. (Gov. Ex. 1, p.4). As explained by Warden Adams, to meet the condition of being in a debilitated medical condition, the defendant "must be completely disabled, meaning [she] cannot carry on any self-care and is totally confined to a bed or chair or capable of only limited self-care and is confined to a bed or chair more than 50% of waking hours." (Gov. Ex. 1, p.4). After reviewing Defendant's medical records and consulting with her medical provider, Adams found that she was "medically stable . . . not confined to a bed or chair . . . [and] able to care for [herself] independently." (Gov. Ex. 1, p.4).

The Government requested Defendant's records from BOP, including any related medical records. (Gov. Ex. 1, pp. 5–33). Defendant's medical records do not show that she suffers from any medical condition or combination of conditions that qualify as a debilitative medical condition. At worst, Defendant suffers from anxiety and depression. However, the records demonstrate that BOP is treating Defendant for those conditions, including with prescription medication. (Gov. Ex. 1, pp. 6, 22, 24, 29).

Defendant filed a pro se motion to reduce her sentence on October 22, 2020. (Doc. No. 123). In support of her motion, she asked the Court to consider her rehabilitative efforts and "extraordinary circumstances at home,"—namely, that she has four children, ages 5 through 20; that her youngest child was born with spinal meningitis and cerebral palsy; that he cannot walk or hear and that he is very hard to care for; that her mother is his current caregiver; and that her

mother has several health problems. (Doc. No. 123, pp. 1–2). Defendant reported that her mother "broke the discs in her back," has "severe arthritis," and has had "multiple surgeries on her bladder." (Doc. No. 123, p. 2). In essence, Defendant asked for compassionate release to care for her children and her mother.

Defendant did not assert or attach proof that she exhausted her administrative remedies with BOP before filing her first motion. In an order dated November 10, 2020, the Court denied the motion without prejudice for failure to exhaust administrative remedies with BOP. (Doc. No. 124). Defendant filed the pending pro se motion to reduce her sentence on September 13, 2021, showing that she did in fact exhaust her administrative remedies with BOP before filing her motion, and the Government concedes as such. (Doc. No. 128). In Defendant's pending motion, Defendant asks the Court to consider her "extraordinary and compelling" rehabilitative efforts and the "extraordinary circumstances" at home–namely, that her youngest child, now 6, has cerebral palsy, is deaf, and in a wheelchair; that her elderly mother is his caregiver, but given several health problems, including a "broken disc" in her back and a "severe case of arthritis in her hands," she is now incapacitated. (Doc. No. 128, pp. 1–2). Defendant also asks the Court to consider the "heightened risk for death" for her mother and her children if they are exposed to COVID-19. (Doc. No. 128, pp. 1–2). Defendant mentions no health conditions of her own in this second, pending motion.

## DISCUSSION

By its terms, 18 U.S.C. § 3582(c)(1)(A) permits the Court to reduce the defendant's term of imprisonment "after considering the factors set forth in [18 U.S.C. § 3553(a)]" if the Court finds, as relevant here, that (i) "extraordinary and compelling reasons warrant such a reduction"

-3-

and (ii) "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." § 3582(c)(1)(A)(i). As the movant, the defendant bears the burden to establish that he or she is eligible for a sentence reduction. United States v. Jones, 836 F.3d 896, 899 (8th Cir. 2016); United States v. Green, 764 F.3d 1352, 1356 (11th Cir. 2014).

The Sentencing Commission has issued a non-binding policy statement addressing motions for reduction of sentences under § 3582(c)(1)(A).[1] As relevant here, the non-binding policy statement provides that a court may reduce the term of imprisonment after considering the § 3553(a) factors if the Court finds that (i) "extraordinary and compelling reasons warrant the reduction"; (ii) "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)"; and (iii) "the reduction is consistent with this policy statement." U.S.S.G. § 1B1.13.

The policy statement includes an application note specifying the types of medical conditions that qualify as "extraordinary and compelling reasons." First, that standard is met if the defendant is "suffering from a terminal illness," such as "metastatic solid-tumor cancer,

---

[1] In a recent decision, the Fourth Circuit determined that the policy statement is no longer binding on courts deciding compassionate release motions because U.S.S.G. § 1B1.13 was enacted before the First Step Act. United States v. McCoy, 981 F.3d 271 (4th Cir. 2020). Specifically, the Fourth Circuit held that the policy statement found in U.S.S.G. § 1B1.13 does not apply to compassionate release motions brought by inmates under 18 U.S.C. § 3582(c)(1)(A)(i). Id. at 281–83. The McCoy Court reasoned that, because Section 1B1.13 applies only to motions brought by the Bureau of Prisons, it cannot be the policy statement applicable in circumstances where defendants bring their own motions for compassionate release. Id. In place of the no-longer-applicable policy statement, McCoy permits "courts [to] make their own independent determinations of what constitutes an 'extraordinary and compelling reason[ ]' under § 3582(c)(1)(A), as consistent with the statutory language[.]" Id. at 284. The McCoy Court noted, however, that Section 1B1.13 "remains helpful guidance even when motions are filed by defendants." Id. at 282 n.7. Because this Court finds that the policy statement is extremely helpful in assessing motions for compassionate release brought by defendants, the Court will rely on it as guidance.

amyotrophic lateral sclerosis (ALS), end-stage organ disease, [or] advanced dementia." U.S.S.G. § 1B1.13, cmt. n.1(A)(i). Second, the standard is met if the defendant is: (I) suffering from a serious physical or medical condition, (II) suffering from a serious functional or cognitive impairment, or (III) experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover. U.S.S.G. § 1B1.13, cmt. n.1(A)(ii). The application note also sets out other conditions and characteristics that qualify as "extraordinary and compelling reasons" related to the defendant's age and family circumstances. U.S.S.G. § 1B1.13, cmt. n.1(B)-(C). One of those conditions is the death or incapacitation of the caregiver of the defendant's minor children. See U.S.S.G. § 1B1.13, cmt.1(C).

Finally, in addition to the non-binding policy statement, the Fourth Circuit has recently clarified that courts may make their own independent determinations as to what constitute "extraordinary and compelling reasons" to warrant a reduction of sentence under Section 3582(c)(1)(A). United States v. McCoy, 981 F.3d 271 (4th Cir. 2020).

The mere existence of the COVID-19 pandemic, which poses a general threat to every non-immune person in the country, cannot alone provide a basis for a sentence reduction. The conditions described in U.S.S.G. § 1B1.13 encompass specific serious medical conditions afflicting an individual inmate, not generalized threats to the entire population. As the Third Circuit has held, "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release." United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020).

That does not mean, however, that COVID-19 is irrelevant to a court's analysis of a motion under Section 3582(c)(1)(A). If an inmate has a chronic medical condition that has been identified by the CDC as elevating the inmate's risk of becoming seriously ill from COVID-19, that condition may satisfy the standard of "extraordinary and compelling reasons." Under these circumstances, a chronic condition (i.e., one "from which [the defendant] is not expected to recover") reasonably may be found to be "serious" and to "substantially diminish[] the ability of the defendant to provide self-care within the environment of a correctional facility," even if that condition would not have constituted an "extraordinary and compelling reason" absent the risk of COVID-19. U.S.S.G. § 1B1.13, cmt. n.1(A)(ii)(I).

Defendant's request for a sentence reduction will be denied because she has failed to show extraordinary and compelling circumstances warranting her early release from prison. First, Defendant sets out in her first and second motion the rehabilitative efforts made while incarcerated, including participating in and then completing the Female Integrative Treatment program and the Residential Drug Abuse Program, completing a variety of classes, and pursuing her GED. (Doc. No. 123, p. 1, Doc. No. 128, p. 1, and Doc. No. 128-1, pp. 1–4). Defendant describes those rehabilitative efforts as "extraordinary and compelling." However, as stated in U.S.S.G. § 1B1.13, the "rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason" for purposes of the policy statement regarding a reduction in a term of imprisonment pursuant to 18 U.S.C. § 3582(c)(1)(A). U.S.S.G. § 1B1.13, cmt. n.3.

While Defendant alleges numerous family concerns, including her mother's alleged incapacitation, the information Defendant provided is confusing and, at times, contradictory. Defendant has also submitted no proof as to her allegations. For example, in the original RIS

request form, Defendant described her now six-year-old son as "disabled. . .has muscular dystrophy. . .is deaf. . .is autistic and he can't walk." (Gov. Ex. 1, p. 3). In her first motion, Defendant described her son as being born with spinal meningitis and cerebral palsy and claimed that he is very hard to care for, as he cannot walk or hear. (Doc. No. 123, pp. 1–2). And in her second motion, Defendant described her son as having cerebral palsy, being deaf, and being in a wheelchair. (Doc. No. 128, pp. 1–2). Defendant does not indicate whether a medical professional has diagnosed her disabled son with any of the above-described medical conditions. Nor is it clear whether Defendant is describing the same medical conditions in a different manner from one document to the next. Defendant offers no records of any kind to document any of the alleged medical conditions or to address the severity of the conditions or how they are being treated or managed.

Defendant's claims about her mother are also confusing, and, as the Government notes, they contradict each other at times in terms of the severity of her mother's problems, such as how many discs were broken in her back, as well as the severity of her arthritis. (See Gov. Ex. 1, p. 3; (Doc. No. 123, p. 2; Doc. No. 128, p. 2). Furthermore, Defendant has produced no records to document any of the alleged medical conditions or address the severity of the conditions or how they are being treated, such that the conditions have rendered Defendant's mother incapacitated. Additionally, Defendant describes her mother as "elderly." (Doc. No. 128, p. 2). The PSR states, however, that Defendant's mother was 55, retired, and on disability as of 2019, making her at most 57 or 58 now, and therefore not elderly. (Doc. No. 97, p. 19).

Finally, as discussed above, the primary reason listed for the requested sentence reduction in the RIS request form was <u>Defendant's</u> debilitative medical condition, not her mother's. In

-7-

other words, Defendant alleged at one point that she had an actual debilitative medical condition. As discussed above, neither Warden Adams nor the Government could find any such condition in Defendant's medical records. Moreover, Defendant did not even attempt to pursue that claim with the Court in either her first or second motion. These facts suggest that Defendant is not being completely truthful in her statements about her reasons for seeking compassionate release.

The Court notes that Defendant's first and second motions also suggest that her mother is the only person available to take care of her children while Defendant is incarcerated. According to the PSR, however, Defendant reported that her disabled old son was living with her sister Laura Bautista while Defendant was in custody and awaiting sentencing. (Doc. No. 97, pp. 19–20). Defendant does not address in her motion why her mother is the only person, aside from her, who can care for her disabled son, given that her sister acted as his caregiver in the past. The Court recognizes that Section § 1B1.13 contemplates that certain family circumstances can qualify as extraordinary and compelling reasons, including the death or incapacitation of the caregiver of the defendant's minor children. See U.S.S.G. § 1B1.13, cmt.1(C). Here, however, Defendant has not shown either that her mother is the only caregiver for her minor children or that her mother has become incapacitated such that she can no longer serve as a caregiver to Defendant's minor children.

Finally, Defendant seeks release because her children and/or her mother are "at a heightened risk for death if exposed" to COVID-19. (Doc. No. 128, p. 2). The Centers for Disease Control and Prevention and the Food and Drug Administration have endorsed the COVID-19 vaccines as safe and effective and have further advised that if a vaccinated person does contract COVID-19, their risk of severe symptoms, hospitalization, or death are greatly

reduced. Defendant admits that her mother is already vaccinated, thereby greatly reducing any reported risk to her mother. (Doc. No. 128, p. 2). Moreover, Defendant has offered nothing to show that her minor children are at a heightened risk of death if they are exposed to COVID-19. In sum, for all these reasons, the Court finds that Defendant has not shown the existence of extraordinary and compelling reasons warranting her early release from prison.

The Court further finds that, even if Defendant could show the existence of extraordinary and compelling reasons warranting her early release from prison, the Section 3553(a) factors weigh against releasing her from prison early. First, Defendant's crime was very serious and particularly dangerous to the community. According to the PSR, investigators used a confidential source to make three controlled buys of methamphetamine from Defendant at her residence between July 12, 2018, and August 1, 2018. (Doc. No. 97, p. 7). Investigators also stopped multiple methamphetamine customers who were leaving Defendant's residence after they bought methamphetamine from Defendant on August 2, 2018, and September 18, 2018. (Id.). Finally, a search of Defendant's residence on September 20, 2018, where she had been selling methamphetamine on multiple occasions, led to the seizure of two sets of digital scales. (Id.).

Defendant received an enhancement for maintaining her residence for the purpose of storing a controlled substance for the purpose of distribution. (Id., p. 9). According to the PSR and the Pre-Trial Services Report, Defendant reported residing with her children before her arrest, meaning that Defendant, despite the presence of her children, including her disabled son, was selling methamphetamine out of the same residence where she was living with her children. (Id., p. 20 and Doc. No. 31). Defendant also reported in the PSR that her disabled son's father is Adam Lopez, a co-defendant in Defendant's case. (Doc. No. 97, p. 20). Lopez was caught with

more than five pounds of methamphetamine during the conspiracy. (Doc. No. 63, p.2). Methamphetamine is an incredibly dangerous drug that destroys the lives of those who consume it and the communities in which they live. Defendant was a member of a conspiracy responsible for distributing significant quantities of that dangerous drug. The sentence previously imposed by the Court appropriately reflects the seriousness of Defendant's offense.

The sentence previously imposed by the Court also accurately reflects the fact that this is not Defendant's first offense, let alone her first felony conviction, and the fact that Defendant has an issue when it comes to deterrence. More specifically, according to the PSR, Defendant is in Criminal History Category III. (Doc. No. 97, p. 15). Defendant committed the offense that was the subject of the federal indictment while still on probation from a prior state conviction. (Id.). Moreover, when Defendant's disabled son, who was reportedly born with serious health conditions, was approximately two years old and unable to walk, Defendant was committing crimes, such as in 2017 when she was arrested for resisting and injury to personal property. She then committed numerous serious felonies between 2017 and 2019, when her disabled son was between the ages of two and four, as part of the conspiracy.

Considering all of these circumstances of Defendant's criminal history, this Court imposed a sentence that was sufficient but not greater than necessary to accomplish the goals set forth in Section 3553(a), and Defendant has provided nothing to show that any of these circumstances have changed since she was sentenced. The Court's sentence properly reflected the seriousness of the offense, the need to deter criminality, and the need to protect the public from further crimes of Defendant. The Court therefore will, therefore, deny Defendant's motion for compassionate release after considering the Section 3553(a) factors.

-10-

Case 1:19-cr-00027-MOC-WCM   Document 134   Filed 11/29/21   Page 10 of 11

In sum, for all these reasons, the Court denies Defendant's motion. This Court notes that, in light of United States v. McCoy, the Court has made its own independent determination as to what constitute "extraordinary and compelling reasons" to warrant a reduction of sentence under Section 3582(c)(1)(A). Defendant has simply not presented "extraordinary and compelling reasons" to warrant a reduction of sentence under Section 3582(c)(1)(A). Having thus considered defendant's motion and reviewed the pleadings, the Court enters the following Order.

## ORDER

**IT IS, THEREFORE, ORDERED** that Defendant's pro se Motion for Compassionate Release/Reduction of Sentence, (Doc. No. 128), is **DENIED**.

Signed: November 24, 2021

Max O. Cogburn Jr
United States District Judge